Ruhini Tashima I would like to reserve two minutes for rebuttal please. The board has been clear that the exceptional and extremely unusual hardship standard is clearly less than unconscionable, and instead the hardship that's experienced must go substantially beyond the ordinary hardship that you'd normally expect to see with a removal. In this case, one viewed in the aggregate and in their totality, the hardships that Mr. Garcia-Pascual's 11-year-old stepson Brian and 4-year-old son Saul would experience meets that standard. In concluding otherwise, the IG accredited in its entirety Mr. Garcia-Pascual and his testimony in its entirety, but failed to recognize that the hardships in their totality met the standard. What about their hardships meet this very rigorous standard? It's a combination of the emotional, financial, and educational hardships that would be experienced. So here for emotional hardships specifically, as the IG recognized, Brian faced this unique situation where he had just learned that Mr. Garcia-Pascual was not actually his biological dad. On top of the fact that as Silva testified and the IG accredited, she's unable to obtain a passport for Brian, which means that he legally cannot leave the United States. And this is even more extreme than the hardship found in Resting Us, where the board noted that one of the factors it was considering was that the applicant there, she lacked foreseeable – she lacked means to foreseeably immigrate back to the United States to rejoin her children. But there's no suggestion that the children had a legal bar on being able to visit her overseas. Well here, that legal ability doesn't exist. Brian is legally forbidden from leaving the United States, while Mr. Garcia-Pascual is inversely statutorily barred from entering the United States for at least 10 years. Let me ask you though about – or sort of challenge you on the idea that just learning that he was his father is an exceptional hardship. It is unique, it is unusual, but I wonder whether it's an exceptional hardship. I mean, is it harder to learn somebody is not your father than to learn somebody is your father or that, you know, you're going to have to be separated from your father? I just don't know whether that – which way that actually cuts and how exceptional that is. I think it would go to exceptional. I guess one point to clarify is that it's these hardships in their totality together meet that exceptional and extremely unusual hardship, not that one piece in isolation has to meet it. But here, as with any child learning that the man they called dad their entire life wasn't their biological dad, and the necessary corollary of that being that their biological dad had effectively abandoned them and had made no attempt whatsoever to reach out or be a part of their life, that's something that every child, including Brian, would need to grapple with and would need additional emotional support and stability at home. But rather than receive that additional emotional support, what Brian instead faced was the prospect of being separated entirely from his dad for the vast majority of his childhood. So it's one of those things where it would have a detrimental sort of psychological effect on him and he needed the stability of having the person he knew as his father to remain home with him. Is that sort of the idea? Yes, Your Honor. Is there anything supporting that in the record, testimony from a psychologist or some evaluation or another that would support that as a fact in this case and not just a possibility for a category of people? No, Your Honor. There wasn't sort of testimony from a psychiatrist or psychologist, but Silva did testify that even with just the news of Mr. Garcia-Pascual's potential removal that had caused Brian, who was previously well-adjusted and happy, to become incredibly withdrawn and isolated and he couldn't bear to spend time with people his own age to such an extent that he became very upset when his friends attempted to reach out to him. But looking to how sort of life-changing this news would be that your parentage is different, it's something that any child in that position would need additional support. And that's… How would cancellation of removal help that circumstance? It would allow Mr. Garcia-Pascual to remain at home to provide that additional support And that's also in combination with how, if Mr. Garcia-Pascual were removed, because Brian's unable to obtain a passport, he wouldn't be able to see his dad at all throughout the entirety of his childhood, which is something that you wouldn't normally see in a case involving removal. Because in most cases, when a parent is removed, there's at least the legal ability for the children to attempt to visit the removed parent over time. But here that ability is completely nonexistent. So in addition to having his perception of his father-son relationship altered, he would also be facing the prospect of his dad being in Mexico and just not being able to reunite with him until… And why would that be impossible for them to have contact in the future? In-person contact, Your Honor. So telephone is entirely possible, but because… Why would in-person contact be impossible? As Silva testified in the IG Accredited, she doesn't know where her abusive ex is, Brian's biological father. And because the biological father wasn't present to give consent to Brian's passport application, that application was rejected, meaning, as Silva testified, that Brian is unable to obtain a passport and because Mr. Garcia-Pascual, if removed, would be unable to return to the United States, they would have no means of being able to see each other either in the U.S. or overseas. This is a tough standard to meet, I think. And then we have a standard of review here, which is, quote, deferential. We're not quite sure whether that's a third standard from, I'm not at least, abusive discretion or substantial evidence or whatever. But in any event, it is a deferential standard according to the Supreme Court. So, can you give me a case that's… All of these cases are different. I know they're sort of unicorns, but because people's circumstances are very different and varied, but can you give me a case that's sort of your best case that's analogous to this one in which the petitioner won? So I would say that the cases we cited show the board's usual and sensible course of practice, but for a specific case, Inri Restinas is a published opinion from the board, which it had very similar… What's the name of that case? I'm sorry. Restinas. And it has similar and even less extreme facts than those hardships alleged here, where in Restinas the applicant had U.S. citizens and children who could neither read nor write in Spanish, no support system in Mexico, and no means of immigrating back to the United States to rejoin her children. Here, we also have U.S. citizens and children who can't read or write in Spanish, no support system in Mexico, because although Mr. Garcia Pasqual and his wife Silva's extended families are in Mexico, they're unable to help provide food or shelter to Mr. Garcia Pasqual, let alone his entire family, even if Brian were able to join them. But even more extreme than Restinas is where the board in Restinas considered how the applicant wouldn't be able to see her children in the U.S., wouldn't be able to immigrate back to the U.S., but here it's even more extreme where there's no ability for Brian to rejoin Mr. Garcia Pasqual in Mexico if the family wanted to stay together. So the separation here is one that's not a product of the parent's choice to separate so that the kids can remain in the U.S. It's a legal necessity because Brian doesn't have a passport. Can I just ask one more question? So this is one of these odd cases, and I feel badly about this, where we're so far removed from the administrative record time-wise that you wonder how things have changed. I know we can't consider that, but any idea whether some of the things you're alleging now or talking about now, like failure to get a passport, are those still problems or do we just have to ignore that? Based on this record, I think we do have to ignore it because this court is reviewing the IJ's decision at the time the IJ made that decision back in 2018 based on the facts before the IJ. However, to the extent this court does have concerns about the progression of time, one possibility could be to remand and the agency on remand could choose to reopen proceedings so that both the government and Mr. Garcia Pasqual can give an update on what the hardships are now on the ground. It's just that on this record, we have no way to know what developments have or haven't occurred post the decision. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal, please. I see that. Thank you, Ms. Tuchina. Mr. Priebe? May it please the court, Christopher Priebe for the government. Stripped to its essentials, petitioner's argument is that they want this court to replace a considered agency judgment, a factual judgment. That his removal won't cause exceptional and extremely unusual harm to his children. But your honors, the agency, they deal with thousands of these cases a year. IJs and the board are well acquainted with what kind of harms are and are not usual in removal cases. Common sense here even leads to the same conclusions. They're alleged... That might be true. I'm sorry to interrupt for a moment. That might be true of the board. But there are some IJs that perhaps are not all that experienced. I'm not sure. That's one of the things I was wondering. Where would an IJ go to gather up relevant data to decide these kinds of cases? Is it precedents that he or she might read or... The IJ, yes, and in fact...  I'm sorry, your honor. I'm sorry. In general. Not this particular one. But in general, where would they go to precedence? Is that how they... Yes. ...decide these cases? And so compare...  Wait a second. I'm sorry. I'm sorry. Go ahead. Yes, your honor. The IJ would read board precedent as the IJ did here and then apply the standard. Also taking into account, you know, what cases have shown certain facts and then just like a common law court, you apply analogies to say, okay, they think this is outside the norm or I don't think this is outside the norm. Speaking of precedents, we have another case that was GBR to our court. It's Gonzales-Rivas against Garland. Do you know that case? Gonzales-Rivas. That was recently decided, your honor. Yeah. 109F41010. That's kind of similar, isn't it? We've got two of the judges who are on that panel, who are on this panel. I wonder if that's a relevant case for you. It's a relevant case, your honor, in that it is a... This court held that the board or the agency had a complete picture of the harms that would befall the petitioner's qualifying relatives and said that these harms did not meet the statutory standard. And that was the extent of this court's review. It was deferential. It did not go much into the... It didn't go digging into the facts, into the record to find or into other cases to find, well, it's a lot similar to this case where they did give relief or it's not similar to this case. That isn't the type of review that this court performed in that case. What kinds of things have qualified as exceptional and extreme hardship? I mean, there have been cases where the board has said that there is no way for this person... For example, a father is removed and, say, the mother and there are like five children. The mother has carpal tunnel syndrome. I think this was one of the cases actually cited in the... I don't have it right here. That's right. FCCG, this is one of the cases that were cited in the addendum, the supplementary addendum that the petitioners brought. The domestic partner had carpal tunnel syndrome that affected their ability to work. Another case was FFE, three children, but then there was no indication that there was any other person available to take care of those children once the petitioner was removed. And then in HAVA, there were five children, one as young as two, none older than 11, and the wife hadn't worked for nine years as of the time of the hearing. There are cases... What about a severe illness of the child? Say the child comes down with leukemia or cancer, do those kinds of cases merit relief? I do not know offhand what diseases have qualified. I would suspect that there may be a case in which that has happened. Is there any situation like that on these facts of health issues with the child? No, Your Honors. There is inability to be with the parent, separation from the parent, this is common. There is emotional hardship, which is common. There's financial hardship, which is common. What's this record show about the financial hardship in terms of the mother's capacity to support the family in the father's absence? From my understanding of the record, she worked previously cleaning buildings about six years before the hearing. There are only two children, so it's not nearly as difficult to support two children as, say, five children. And there's no indication that I found that the wife could not do that work. Wouldn't you say, though, that learning that the person you thought was your father is not your father is pretty unusual? Maybe not exceptional, but pretty unusual? It is unique, as the IJ, in fact, said. But it is not this court's role to step in and say that is so far out of the norm that the agency, whatever deferential standard of review you want to impose, that this is not so far out of the norm of hardships to meet the statutory standard. That's something that's been entrusted to the agency to make this call on, and Congress doesn't want the courts of appeals to be stepping in and acting and looking at this like a de novo or any sort of lower standard of review. If the court has no further questions, we ask that you deny the petition for review. Thank you. I want to correct the record here. I misspoke. There are no members of this court who are also members of this Gonzales-Rivas court. I simply misread it at first. So other than that. Thank you, Your Honor. Thank you. Good afternoon. I'd just like to quickly address a couple of points. The first is that the government referred to the hardship determination as a factual judgment. The Supreme Court in Wilkinson was clear that although this is a fact-intensive question, it is the quintessential mixed question of law and fact, specifically the application of law to the established facts the IJ found. The only thing about that, and I know that Judge Arnold asked about the standard review, but this is really important, which is aren't we really unclear, though, because the U.S. Supreme Court has said that when factual issues predominate over legal ones, you're still in clear review on a mixed question of law and fact. I don't believe so, Your Honor. And this is under Minaski, a Supreme Court decision. In Minaski, the court explained that it's very difficult to go from first principles and reason back to a standard review. And what courts should instead do is look to whether there is a long history of appellate courts applying a specific standard. And we do have that history here, and I think it's undisputed. As the government recognized in footnote two of their brief, before IARA was enacted, courts reviewing the then-hardship standard, which then required extreme hardship, they used abuse of discretion. And given that long history under Minaski, we likewise believe abuse of discretion is appropriate. If there are no further questions. I see none. Thank you, counsel, for both parties. We appreciate your providing argument to the court this afternoon, and we'll continue to study the record and render decision in due course. Thank you.